```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
_____
                                    :
BENJAMIN PARKER,                    :
                                    :
          Plaintiff,                :   Civ. No. 18-8674 (NLH-JS)
                                    :
     v.                             :   OPINION
                                    :
UNITED STATES OF AMERICA,           :
et al.,                             :
          Defendants.               :
_____:
```

APPEARANCES:

Philip J. Cohen, Esq.
Kamensky-Cohen & Associates
194 South Broad Street
Trenton, NJ 08608

Patrick J. Whalen, Esq.
109 S. Warren Street
PO Box 23653
Trenton, NJ 08608

 Attorneys for Plaintiff

Craig Carpenito, United States Attorney
Kristin Lynn Vassallo, Assistant United States Attorney
Office of the U.S. Attorney
District Of New Jersey
970 Broad Street
Newark, NJ 07102

 Attorneys for Defendants

HILLMAN, District Judge

  This matter comes before the Court on a motion filed by Defendant United States seeking reconsideration of the Court's order denying in part its motion to dismiss.  ECF No. 30.

Plaintiff Benjamin Parker opposes the motion. ECF No. 32. For the following reasons, the Motion is granted in part.

BACKGROUND

Plaintiff Benjamin Parker brought this civil action under the Federal Tort Claims Act ("FTCA"), alleging that he was assaulted by an unknown inmate or inmates while he was incarcerated at the Federal Correctional Institution in Fort Dix, New Jersey, and that this attack occurred as a result of the negligence on the part of the Bureau of Prisons ("BOP") and its employees. Plaintiff alleges that the employees were negligent in creating the conditions that led to his assault because (1) certain actions may have resulted in the perception that Plaintiff was cooperating with prison officials in an investigation akin to being a "snitch"; (2) they created dangerous conditions by leaving loose cinder blocks and other debris in the second floor bathroom of Plaintiff's housing unit; and (3) staffing was insufficient to prevent the attack on Plaintiff. See ECF No. 1.

At the time of the incident, Plaintiff was incarcerated at FCI Fort Dix and housed in the East Compound in Unit 5741 (the "Unit"), containing approximately 300 inmates. Id. ¶¶ 18-19. Generally, only one corrections officer was assigned to be on duty and that officer was responsible for monitoring and

2

supervising Unit 5741. The corrections officer's office was located on the first floor of the Unit. Id. ¶ 20.

Plaintiff was housed on the second floor of the Unit in a 12-person room with a door that did not lock. Id. ¶ 21. There was a large bathroom on that second floor that was left in a constant state of disrepair. Id. ¶ 22. According to the complaint, BOP employees routinely removed cinder blocks from the Bathroom walls and shower stalls in search of contraband on a near weekly basis. Id. ¶ 23. Afterwards, they would leave behind a pile of cinder blocks and other construction debris unattended and accessible to all inmates for days at a time. Id. ¶¶ 24-25. Plaintiff alleges that the cinder blocks and debris created an obvious, known, and plainly visible risk and danger to the inmates housed at in the Unit. Id. ¶ 26. He alleges that by creating this debris pile, the federal employees provided some of the violent and dangerous inmates at the Fort Dix with weapons to use against other inmates with whom they had disagreements or confrontations, such as Plaintiff. Id. ¶ 27.

On September 6, 2015, at approximately 10:00 a.m., a Defendants broadcasted a message over the public address system instructing Plaintiff to report to Special Investigative Services ("SIS") Lieutenant Anderson's office. Id. ¶ 31. Lieutenant Anderson brought Plaintiff into the SIS Office to interview him regarding an alleged extensive gambling ring

3

involving several inmates at FCI Fort Dix.  Id. ¶ 32.  Plaintiff explained that he was not involved in that gambling operation, knew next to nothing about it, and had no information to provide to the investigation.  Id. ¶¶ 33, 36.

Another inmate had reported the matter to BOP employees and had allegedly falsely identified Plaintiff as being the "enforcer" for the gambling ring.  Id. ¶¶ 37-38.  This inmate had been threatened with violence by the inmates who were operating the ring and had accumulated a significant gambling debt.  Id. ¶ 37.  According to Plaintiff, this false tip or fabrication was the reason Defendants wanted to interview Plaintiff.  Id. ¶ 39.  At some point after this first interview, Defendants "revealed, disclosed, communicated, advertised, represented, published, reported and/or displayed, to other inmates housed at the Fort Dix Prison, that Plaintiff was being interviewed regarding that alleged gambling ring."  Id. ¶ 43.

Ten days later, on Wednesday, September 16, 2015, SIS Agent Officer Virgillo escorted Plaintiff from Unit 5741 to the SIS Office.  Id. ¶ 45.  Plaintiff was questioned about the gambling operation again, and Plaintiff again explained that he was not involved.  Id. ¶ 46.  Plaintiff alleges that the BOP employees knew or should have known that the inmates running the ring were dangerous and had already threatened physical harm to other inmates, including the inmate who, he alleges, falsely

4

implicated him.  Id. ¶ 41.  Plaintiff describes their actions, e.g., announcing over the loudspeaker that Plaintiff had to report to SIS and having SIS officers escort him around the Unit, as putting a "target" on his back and inviting an unjustified and unwarranted retaliatory attack on Plaintiff.

Two days later on September 18, 2015, Plaintiff was attacked by one or more inmates.  Id. ¶ 48.  Plaintiff was struck multiple times in the head with a blunt object, which Plaintiff alleges was a cinder block or some other piece of construction debris that BOP staff had left in the bathroom. Id. ¶ 49.  According to the Complaint, the assault occurred between 6:00 a.m. and 6:15 a.m. when Officer LaTasha Rodgers was on duty in the Unit.  Id. ¶¶ 50, 53-54.  Plaintiff sustained significant, permanent injuries including brain damage, a posttraumatic epileptic episode, severely broken facial bones, permanent loss of vision, smell, and taste, and permanent bodily pain and discomfort.  Id. ¶ 52.

Plaintiff filed this complaint asserting an FTCA claim against the United States, the BOP, and several individual officers.  ECF No. 1.  On June 27, 2019, the Court granted in part a motion to dismiss the complaint.  ECF Nos. 27 & 28.  It dismissed all defendants except the United States because the United States is the only proper defendant in an FTCA action. It denied the motion to dismiss to the extent the United States

5

argued Plaintiff failed to exhaust his administrative remedies and that its actions fell within the discretionary function exception.

The United States now moves for reconsideration of the portion of the Court's order denying its motion to dismiss. ECF No. 30. It argues the Court overlooked its arguments concerning the discretionary function exception and the dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).

STANDARD OF REVIEW

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Local Civil Rule 7.1(i), a motion for reconsideration must be based on one of three grounds: (1) an intervening change in controlling law, (2) new evidence not previously available, or (3) a clear error of law or manifest injustice. N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995). Generally, a motion for reconsideration is intended "to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). But "[r]econsideration is an extraordinary remedy that is granted very sparingly." Brackett v. Ashcroft, 2003 U.S. Dist. LEXIS 21312, at *2 (D.N.J. Oct. 7, 2003) (internal citations omitted); see also L. Civ. R. 7.1(i), cmt. 6(d).

A motion for reconsideration may be granted only if there is a dispositive factual or legal matter that was presented but not considered that would have reasonably resulted in a different conclusion by the court.  White v. City of Trenton, 848 F. Supp. 2d 497, 500 (D.N.J. 2012).  Mere disagreement with a court's decision should be raised through the appellate process and is thus inappropriate on a motion for reconsideration.  United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999).

DISCUSSION

The United States argues the Court overlooked its arguments on "the defendants' discretionary function arguments concerning either the investigative or supervisory conduct alleged in the complaint."  ECF No. 30-2 at 15.  It also argues the Court did not address its arguments under Federal Rule of Civil Procedure 12(b)(6) regarding Plaintiff's claims for negligent hiring, negligent retention, negligent training, negligent supervision, negligent investigation, and tortious interference with prospective economic opportunity.  As it appears the Rule 12(b)(6) arguments were inadvertently not addressed in the Court's prior opinion, the Court will grant the motion for reconsideration on the Rule 12(b)(6) argument only.[1]

---

[1] "The United States Court of Appeals for the Third Circuit guided that a litigant's motion for reconsideration should be

7

A.   Rule 12(b)(6)

The United States argues Plaintiff's claims for negligent hiring, negligent retention, negligent training, negligent supervision, negligent investigation, and tortious interference with prospective economic opportunity should be dismissed for failure to state a claim.  ECF No. 12-8 at 34.  It argues New Jersey does not recognize a "negligent investigation" tort and that the complaint does not contain facts to support the other negligence claims.  Id. at 34-35.  The Court will dismiss the tortious interference claim but permit the others to proceed.

The Court declines to dismiss the negligent investigation allegation at this time.  The Supreme Court of New Jersey has only rejected a "new cause of action for negligent investigation [when it is used] as a surrogate for a traditional malicious prosecution claim."  Brunson v. Affinity Fed. Credit Union, 972 A.2d 1112, 1125 (N.J. 2009); see also Drisco v. City of Elizabeth, No. 03-397, 2010 WL 1253890, at *14 (D.N.J. Mar. 23, 2010) ("New Jersey law does not recognize 'improper investigation' as an independent cause of action in a malicious

---

deemed 'granted' when the court (the decision of which the litigant is seeking a reconsideration of) addresses the merits—rather than the mere procedural propriety or lack thereof—of that motion." In re Telfair, 745 F. Supp. 2d 536, 538 n.1 (D.N.J. 2010), aff'd in part, vacated in part sub nom. Telfair v. Office of U.S. Attorney, 443 F. App'x 674 (3d Cir. 2011) (citing Pena-Ruiz v. Solorzano, 281 F. App'x 110, 111, n.1 (3d Cir. 2008)).

8

prosecution action . . . ."). Plaintiff is not attempting to evade the requirements of a malicious prosecution claim by alleging negligence instead; therefore, the Court sees no reason not to apply the general requirements for a negligence action: "[i]n order to sustain a common law cause of action in negligence, a plaintiff must prove four core elements: '(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages [.]'" Polzo v. Cty. of Essex, 960 A.2d 375, 384 (N.J. 2008) (quoting Weinberg v. Dinger, 524 A.2d 366, 373 (N.J. 1987)) (alterations in original).

Plaintiff was in the custody of the United States at the time of the events leading up to his injury. "'The Bureau of Prisons . . . shall — (2) . . . provide for the safekeeping, care and subsistence . . . (3) provide for the protection . . . of all persons charged with or convicted of offenses against the United States.'" Jones v. United States, 91 F.3d 623, 624 (3d Cir. 1996) (quoting 18 U.S.C. § 4042(a)(2)-(3)) (omissions in original). It is certainly true that the BOP must be able to conduct, and has a duty to conduct, investigations targeting illegal conduct and breach of institutional rules without the courts second guessing a particular method or course of conduct. Nor does an inmate have a right to challenge such ordinary discretionary decisions when they are reasonably undertaken or be immune from scrutiny even if actually innocent. But

9

accepting Plaintiff's factual allegations as true and giving Plaintiff the benefit of all reasonable inferences for purposes of Rule 12(b)(6), it is plausible that the unique manner in which this particular investigation was conducted unnecessarily put Plaintiff in harm's way.

As alleged, by announcing over the loud speaker that Plaintiff had to report to SIS, escorting Plaintiff around the Unit with identifiable SIS officers, re-interviewing him under similar circumstances, and revealing Plaintiff's SIS interviews to other inmates, Defendants arguably broadcast to everyone watching and listening that Plaintiff was a "snitch" cooperating with SIS.  Whether this particular manner of conducting an SIS investigation under the unique circumstances of this case ultimately constitutes a breach of duty or caused Plaintiff's injuries, or is vulnerable to a complete defense based on facts outside the pleadings, is a question of fact, or mixed question of fact and law, not suitable for resolution on a motion to dismiss.  Under the facts as pled, the Court deems the claim plausible and will permit the claim to go forward.

The United States also claims that Plaintiff has failed to state a claim for negligent hiring, negligent retention, negligent training, and negligent supervision because he did not identify the specific employees.  ECF No. 12-8 at 35.  The complaint alleges that "[o]n or about September 6, 2015,

10

Defendants, Lt. Anderson, Officer Vigerallo, and/or John/Jane Does #1-10, negligently . . . disclosed, communicated, advertised, represented, published, reported and/or displayed, to other inmates housed at the Fort Dix Prison, that Plaintiff was being interviewed regarding that alleged gambling ring." ECF No. 1 ¶ 43.  Plaintiff also alleges Officer Rodgers was responsible for monitoring Unit 5741 but failed to do so, "and, as a result, Plaintiff was violently attacked." Id. ¶ 54.  A reasonable inference from the facts alleged in the complaint is that the employees identified by Plaintiff, including the John Doe employees, are the employees connected to Plaintiff's negligent hiring, negligent retention, negligent training, and negligent supervision claims.

The Court will dismiss Plaintiff's tortious interference claim, however.

> Under New Jersey law, to properly state a claim for tortious interference with prospective economic benefit, a party must plead the following elements: (1) it had a reasonable expectation of an economic benefit; (2) the non-movant's knowledge of that expectancy; (3) wrongful, intentional interference with that expectancy; (4) the reasonable probability that the claimant would have received the anticipated economic benefit, but for the interference; and (5) damages resulting from such interference.

Hong Kong Ibesttouch Tech. Co. v. iDistribute LLC, No. 17-2441, 2018 WL 2427128, at *3 (D.N.J. May 30, 2018).  Plaintiff alleges that "[a]s a further result of the Defendants' negligence and

11

misconduct described above, Plaintiff is disabled and otherwise was severely limited in his ability to obtain gainful employment due to the aforementioned injuries sustained." ECF No. 1 ¶ 62. No further information is in the complaint. The Court will dismiss this claim without prejudice as Plaintiff may be able to amend the complaint with the facts necessary to state a claim.

    B.   Discretionary Function

The United States also asks the Court to reconsider its decision on the discretionary function exception to the waiver of sovereign immunity contained within the FTCA. It argues the Court overlooked some of its arguments. Because the Court reviewed and addressed all of the discretionary function arguments in its prior opinion, the Court declines to reconsider this argument.

The United States asserts that the Court did not address the arguments that the discretionary function exception applies to Plaintiff's claims concerning the investigative and supervisory conduct. ECF No. 30-2 at 15. In its prior opinion, the Court recognized that the United States argued that "Plaintiff may not assert any of his claims against it because each category of alleged conduct is a discretionary government function that may not serve as a basis for a claim under the FTCA." ECF No. 27 at 17. It then declined to "decide the application of the exception" due to "the limited record before

12

it[.]" Id. at 18.  The Court did not "overlook" the United States' arguments merely because it disagrees with the outcome. Disagreement is not an appropriate basis for reconsideration. See Qureshi v. AG United States, 677 F. App'x 757, 763 (3d Cir. 2017) ("A motion to reconsider must be based on errors of fact or law; mere disagreement with the outcome is not sufficient."); see also United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999).  The United States has not met the standard for reconsideration for the discretionary function argument.

CONCLUSION

    For the reasons set forth above, the Motion for Reconsideration is granted in part.  Plaintiff's tortious interference claim is dismissed without prejudice.  Fed. R. Civ. 12(b)(6).  The remainder of the motion is denied.  An appropriate Order follows.


Dated: May 4, 2020            s/ Noel L. Hillman
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.